**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHAD GREEN,<br><br>Petitioner,<br><br>v.<br><br>CRAIG LOWE,<br><br>Respondent. | No. 4:26-CV-01009<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**AUGUST 31, 2026**

## I. BACKGROUND

Chad Green ("Petitioner"), a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") since February 2026, previously filed a *pro se* 28 U.S.C. § 2241 petition against Craig Lowe ("Respondent") seeking release from ICE custody or, alternatively, a bond hearing.[1] This Court granted that petition, ordering that Petitioner be released or provided with an individualized bond hearing.[2]

Petitioner's bond hearing occurred on June 11, 2026,[3] where Petitioner was represented by counsel and had the burden of proof to show he was neither a flight risk or danger to the community.[4] The Immigration Judge ("IJ") received exhibits

1 Doc. 1 at 8.
2 Doc. 10.
3 Doc. 15 at 1.
4 Doc. 20-3 at 3, 8.

from both Petitioner and Respondent, including a letter from Petitioner's citizen wife and submissions about Petitioner's criminal history.[5]

At the hearing, the main subject of discussion was Petitioner's criminal history: Petitioner had four prior arrests for charges including drug paraphernalia use and possession, retail theft, burglary, criminal trespass, simple assault, harassment, aggravated assault, and public nuisance.[6] Several of the charges were withdrawn, including the burglary and aggravated assault charges, and the other charges appeared to have been resolved through guilty pleas or remained pending at the time of the bond hearing.[7] Counsel for Respondent presented argument that Petitioner has been in the United States for less than four years and had been arrested four times.[8]

The IJ denied Petitioner's bond, finding that Petitioner was a danger to the community.[9] The IJ did not hear argument or evidence on risk of flight, noting that a finding of danger to the community was dispositive for the issue of bond.[10] In the hearing, the IJ described his rationale for finding Petitioner was a danger to the community, specifically referencing Petitioner's prior criminal history and incarceration.[11]

---

5 Doc. 20-3 at 3-4.
6 *Id.* at 4.
7 *Id.* at 7.
8 *Id.* at 7-8.
9 Docs. 20-2, 20-3 at 8.
10 Doc. 20-3 at 7.
11 *Id.* at 8.

Following the hearing, Petitioner submitted multiple motions asserting that Petitioner's June 11 bond hearing was insufficiently individualized to comply with the Court's prior Order and notions of due process.[12] Petitioner seeks to have this Court conduct a new bond hearing.[13] The Court ordered Respondent to respond to Petitioner's motions and to submit a copy of the transcript of the bond hearing.[14] Respondent has now done so, and Petitioner has filed *pro se* briefs in support of his motions.[15] The motions are now ripe for disposition. For the reasons stated below, Petitioner's motions to enforce will be denied.

## II. LAW

Petitioner submitted three motions in total, all seeking largely the same relief.[16] Petitioner's first motion to enforce was submitted before his bond hearing and, therefore, is denied as moot. The Court analyzes Petitioner's remaining motions and arguments together, as they collectively assert that the bond hearing was deficient and seek the same relief, that being release or a new bond hearing conducted by this Court.[17]

---

12 Doc. 14, Doc. 16 at 1, Doc. 17.
13 Docs. 16, 17.
14 Doc. 19.
15 Docs. 20, 21, 22. Such submissions will be viewed with a measure of tolerance.
16 Docs. 14, 16, 17.
17 Docs. 16, 17.

### A. Jurisdiction

Respondent first argues that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[18] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[19]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[20] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[21]

Additionally, beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to

---

18 Doc. 20 at 4-6.

19 8 U.S.C. § 1126(e).

20 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

21 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

enforce its own orders."[22] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[23]

Here, Petitioner asserts that the bond hearing neither provided Petitioner with due process nor comported with the Court's prior Order because it failed to sufficiently consider Petitioner's individual circumstances.[24] This argument falls within an exception to § 1226(e)'s bar on review of a bond determination, as the Court is not divested of jurisdiction to consider whether the bond hearing complied with the Court's own order and whether it was fundamentally fair. Therefore, Respondent's jurisdictional arguments fail.

Respondent additionally asserts that Petitioner has failed to exhaust his administrative remedies related to the bond hearing, and that, therefore, this Court should decline to review the motion.[25] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[26]

---

22 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

23 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

24 Doc. 16 at 1-2; Doc. 17 at 1-3.

25 Doc. 20 at 7-9.

26 *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

The Court need not determine whether exhaustion of administrative remedies is required in this matter because, even when exhaustion is necessary, courts will not enforce that requirement if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[27] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[28]

Additionally, to the extent that Petitioner would be required to exhaust administrative remedies, such exhaustion would not apply to this Court's review of its own order when determining if Respondent complied therewith. Accordingly, the Court has jurisdiction to consider Petitioner's motion.

**B. Merits**

Turning to the merits of Petitioner's motions, Petitioner argues that his bond hearing was deficient by failing to sufficiently consider Petitioner's individual circumstances and by placing the burden on Petitioner to show that he was a risk of

---

27 *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

28 *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

neither danger nor flight.[29] Petitioner asserts that the IJ did not consider or discuss Petitioner's family ties or potential release conditions, and instead only considered Petitioner's prior criminal history, which Petitioner asserts was temporally distant and not reflective of Petitioner's current dangerousness.[30] Respondent asserts that the IJ sufficiently considered Petitioner's circumstances and that the proceeding was not deficient.[31]

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[32] The Due Process Clause guarantees individuals "an

---

[29] Doc. 16 at 4; Doc. 17 at 2. Petitioner's first motion under 28 U.S.C. § 2241, which is denied as moot, was largely based on the conditions of his confinement. Doc. 14 at 2-5. Petitioner again makes reference to the conditions of his confinement in his later submissions. Doc. 21 at 7-10. However, the United States Court of Appeals for the Third Circuit permits § 2241 petitions that challenge conditions of confinement "only in extreme cases." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324 (3d Cir. 2020). Such petitions are "'limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.'" *Id.* (quoting *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973)). Despite permitting § 2241 petitions challenging conditions of confinement in limited circumstances, as other courts have observed, the Third Circuit has "expressly reserved the question whether less serious conditions—those not presenting the kind of existential threat confronted during an uncontrolled pandemic—could support a habeas claim," and courts have restricted § 2241 conditions claims to cases where the conditions make detention itself unconstitutional. *See Silva v. Soto*, No. 25-16577, 2025 3485658, at *3 (D.N.J. Dec. 4, 2025) (citing to *Hope*, 972 F.3d at 325)).

Petitioner's described conditions of release described in his first petition, Doc. 14, and referenced again in his later submission, Doc. 21 at 7-8, do not reach the heightened standards necessary for a conditions-of-confinement claim to be cognizable through a § 2241 petition. Those conditions, while unpleasant, do not rise to the "extraordinary" and life-threatening nature of the conditions that existed at the beginning of the COVID-19 pandemic that previously sustained a conditions-of-confinement claim. *Hope*, 972 F.3d at 324. Rather, these conditions are the type that remediation, rather than release, may remedy. As such, Petitioner's proper recourse is through a civil rights action, not a § 2241 petition. Therefore, any argument Petitioner intended to make based on the conditions of his confinement is unsuccessful.

[30] Doc. 16 at 2, 4.

[31] Doc. 20 at 11-13.

[32] *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).

opportunity to be heard at a meaningful time and in a meaningful manner."[33] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[34] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[35]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[36] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[37] "However, to the extent that Petitioner challenges how the IJ weighed the evidence presented, such an argument "challenges a discretionary determination" that the Court may not review.[38]

---

[33] *Id.* (internal quotation marks omitted).
[34] *Id.* (brackets and internal quotation marks omitted).
[35] *Id.* (internal quotation marks omitted).
[36] *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F. 3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).
[37] *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).
[38] *Ghanem*, 2022 WL 574624, at *2.

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[39] "'Mechanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice.'"[40] The Board of Immigration Appeals ("BIA") has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including the alien's criminal record, the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.[41] However, reliance on temporally distant criminal history may not

---

39 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

40 *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

41 *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit has held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors may be considered by the IJ. *See Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v. Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026).

support a determination of danger where such history is not reflective of the petitioner's current dangerousness.[42]

Here, Petitioner's hearing was sufficiently individualized to comport with due process and this Court's prior Order. First, to the extent that Petitioner contends the burden of proof was improperly placed on him instead of the Government, such an argument is unavailing. As I held in my prior Memorandum Opinion, the relevant statute for Petitioner's detention is § 1226(a), the permissive detention statute, as opposed to § 1226(c), the mandatory detention statute.[43] The law is clear that, in a bond hearing under § 1226(a), "the burden remains on the detainee at all times."[44] Accordingly, the Court cannot conclude that the IJ erroneously held that Petitioner bore the burden of proof.

Moreover, from the submitted transcript, it appears that the hearing was not so deficient as to be fundamentally unfair or to deprive Petitioner of an individualized hearing.[45] Petitioner was represented by counsel who was permitted to present argument, and the IJ received evidence from both sides related to

---

42 *See Guerrero Sanchez v. Sabol*, No. 1:15-CV-2423, 2016 WL 7426129, at *5 (M.D. Pa. Dec. 23, 2016) *overruled in part on other grounds by Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274 (3d Cir. 2018); *Chi Thon Ngo v. INS*, 192 F.3d 390, 398-99 (3d Cir. 1999); *see also, e.g., Peposhi v. Lowe*, No. 3:26-CV-912, 2026 WL 2126118, at *4 (M.D. Pa. July 23, 2026).

43 Doc. 9 at 6.

44 *See Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 279 (3d Cir. 2018); *but see Zheng*, 826 F. Supp. 3d at 561 (noting that some courts have found that the burden may shift to the Government after detention has become prolonged and unreasonable).

45 *See* Doc. 20-3 at 3-8.

Petitioner's case and indicated on the record that he had examined it.[46] Petitioner asserts that the Court did not hear argument related to risk of flight, such as Petitioner's community ties or family, but the IJ indicated he felt no need to address risk of flight since he found that Petitioner had not met his burden on dangerousness.[47] The burden is on Petitioner to prove that release "would not pose a danger to property or persons, *and* that [he] is likely to appear for any future proceeding,"[48] so the IJ was correct that a finding of dangerousness would foreclose the need to examine risk of flight.

The IJ considered Petitioner's prior criminal history, noting that Petitioner had accrued four arrests in the four years he had been present in the United States, and examined the relative severity of the offenses.[49] The IJ noted that Petitioner was originally charged with more serious, violent offenses such as aggravated assault and burglary, before pleading to the less serious offense of breaking into a structure.[50] Such factors are facially valid considerations for a determination of dangerousness.[51]

The IJ explained that Petitioner was sentenced to a minimum of five months and a maximum of eighteen months confinement for his criminal conduct, and that

---

46 Doc. 20-3 at 6.
47 *Id.* at 7-8.
48 *Borbot*, 906 F.3d at 275 (quoting 8 C.F.R. § 236.1(c)(8)).
49 Doc. 20-3 at 8-9.
50 *Id.*
51 *See supra*, note 41.

he ultimately served almost a year of incarceration through a time-served sentence.[52] The IJ noted his concern about the quantity of arrests and that Petitioner did not produce documents or evidence explaining the underlying conduct.[53]

Petitioner asserts that the IJ did not consider Petitioner's "current" risk of danger when denying bond based on Petitioner's prior criminal record,[54] but this argument is unavailing. Petitioner's counsel indicated that Petitioner's most recent incident occurred recently, on April 5, 2025, and, as the IJ discussed, this was the most serious incident of Petitioner's prior criminal history.[55] Petitioner did not present evidence of rehabilitation or change in circumstances such as would indicate that his prior criminal conduct was not reflective of his current risk of danger, nor was Petitioner's prior criminal conduct so temporally distant as to render reliance on it improper.[56] Therefore, the IJ's use of Petitioner's prior criminal history when determining that he had failed to meet his burden of proof on dangerousness was not

52 Doc. 20-3 at 8-9.
53 *Id.*
54 Doc. 21 at 6.
55 Doc. 20-3 at 6, 8.
56 *Cf Guerrero Sanchez*, 2016 WL 7426129, at *7 (where the IJ's finding of danger did not reflect Petitioner's current risk level because it was "questionable whether the IJ even reviewed or considered the extensive evidence of rehabilitation Petitioner provided, or other pertinent sections of the Presentence Investigation Report") and *Ngo*, 192 F.3d at 398-99 (3d Cir. 1999) (where reliance on criminal history from ten years ago was insufficient). Petitioner cites to *Guerrero Sanchez* to argue that the IJ should have considered "submissions from the detainee showing, inter alia, 'reform, rehabilitation . . . and any other evidence that contravenes danger to the community'" but no such submissions were made by Petitioner's counsel at the hearing despite there being an opportunity to do so. Doc. 21 at 5; Doc. 20-3 at 6. While the IJ did not permit additional argument on flight risk, Petitioner's counsel was heard fully on danger and did not present any mitigating evidence. Doc. 20-3 at 7-8.

so fundamentally unfair as to deprive Petitioner of due process or an individualized hearing.[57]

In sum, at the bond hearing, the IJ considered submissions relevant to Petitioner's case, heard argument from both parties, found that Petitioner had not met his burden to show that he was not a danger to the community, and stated his rationale on the record, which included facially valid consideration of prior criminal conduct. Accordingly, Petitioner's hearing was both sufficiently individualized and fair as to comport with this Court's prior Order and due process.[58] Therefore, Petitioner's motions to enforce are denied.

---

57 Petitioner asserts in one of his motions that he has been deprived of due process because there are systemic deficiencies in all bond hearings in his jurisdiction. Doc. 17 at 2-3. However, the Court is limited to the submissions, motions, and record before it in the instant case. As the Court has determined that Petitioner's hearing was sufficiently individualized, and as Petitioner has not submitted anything to suggest that DHS is conducting a pattern, policy, or practice of sham hearings, such an argument is not properly brought in this petition.

58 *Compare Zheng*, 826 F. Supp. 3d at 560 (due process violation found where the IJ stated only the conclusion that the petitioner was a flight risk "without any reasoning or reference to facts in the record") *and Rodriguez v. Greene*, 4:26-CV-0333, 2026 WL 574961, at *12 (N.D. Ohio Mar. 2, 2026) (where the IJ's decision "contain[ed] zero reference to any record or arguments put forth by either party" and did not provide due process) *with De Souza v. Soto*, No. 25-18734, 2026 WL 102946, at *3 (D.N.J. Jan. 14, 2026) (a proceeding was fundamentally fair where the IJ considered the petitioner's lack of evidence of employment and fixed address), *Avilov*, 2026 WL 1947617, at *3 n.2 (finding a bond hearing satisfactory where the IJ "heard argument, asked questions, considered [petitioner's case], addressed both negative and positive factors, and stated a reason for denying bond"), *Rodriguez v. Bondi*, 3:26-CV-285, 2026 WL 1378874, at *2 (W.D. Pa. May 18, 2026) (finding a fair hearing where "the IJ explained his reasons for denying bond"), *Kamara v. Doll*, No. 1:17-CV-01176, 2017 WL 6497362, at *4 (M.D. Pa. Dec. 19, 2017) (noting that the IJ acknowledged several facts specific to the petitioner and that, "[w]hile Petitioner may be dissatisfied his individualized assessment, it cannot be said that the immigration judge did not follow the law of the case[ ]as prescribed by this [C]ourt and conduct an individualized bond hearing") (internal quotation omitted) *and Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78 (3d Cir. 2019) (due process requirements were satisfied by a hearing where the IJ "considered specific details" of the petitioner's case) (affirming Brann, J.).

## III. CONCLUSION

Petitioner's motions to enforce the Court's prior Order and to conduct a new bond hearing are denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge